The closing argument at the trial in this case was improper and prejudicial because it misstated the evidence in three distinct ways. First, the government argued that there were $2.1 million in wires from the offshore Bermudan entity and that it was not paid back. Second, the government argued that the loan agreements were fake. Third, the government argued that STS, the offshore Bermudan entity, recorded millions of dollars as fees rather than as loans. Let me take each of these three misstatements of the evidence in turn. First, the $2.1 million in wires was not paid back. The government argued the evidence is clear that these were not loans and that the defendant had no intention of paying the money back. How do you know? Let me count the ways. How do we know the loans were a sham? Well, they were never paid back. The defendant never intended to repay these loans, and he never did. In fact, the evidence demonstrated that he made payments on these loans both before and after he learned of the government's investigation in this case. Government Exhibit No. 11 is a summary exhibit at Joint Appendix 1251, which summarizes repayments in the form of transfers of interest in four different pieces of real property, one in St. Lucia, two in North Carolina, from 2007 to 2010. So what element of the crime are you arguing here was incorrectly resolved? Which element of the crime? Well, in this case, Your Honor, it is whether or not there was an intent to repay the loans at the time they were made. The court instructed the jury that whether repayments were made was one of the factors that the jury was supposed to consider in determining whether or not these were loans. The government argued to the jury that there were no repayments, and that was a misstatement of the evidence. Well, that's, I mean, in trials, closing arguments can be a bit unwieldy, and, you know, almost every trial I was ever part of, there was something that was overstated by one counsel or another, and it's typically the duty and opportunity, quite frankly, to when someone does that, for you to point out that the evidence said something different, and that's kind of how trials work. And, you know, certainly I understand your point, but why is that not something that's typical in a trial that can't be handled by opposing counsel? And even if there's some error, you know, you've got a lot of evidence to deal with about whether or not, you know, these were loans or not, besides that one counsel, that one argument, or those several arguments in closing. Well, Your Honor, your last point is the one that distinguishes in this case. This is not a passing misrepresentation or mischaracterization of the evidence. There are three distinct facts that were misrepresented. They were misrepresented repeatedly throughout the closing, including the very last words that the jury heard in the rebuttal close. And, Your Honor, that is reversible error, even under a plain error standard. And the case I would say that is most factually analogous to this one is the Davis case from the D.C. Circuit that I cite, and what the Davis case says is the standard is actually the same under a plain error standard or a harmless error standard for this kind of error. And what Davis says is when there are multiple misstatements, multiple misstatements, and hear multiple misstatements about core issues in the case, the question is whether or not those misstatements, whether the court can say with confidence that those misstatements did not affect the jury's verdict. So even under a plain error standard, and I would agree with the court, there was no objection. The defense counsel missed that opportunity, but under the standard that we're on here, it's reversible error. We've almost never reversed cases based on a closing argument that was a little florid. Well, this was more than a little florid. Excuse me a minute. And I think the reason is that we would be asked to police practically every closing argument or closing arguments in many a jury case. They would, the losing party almost invariably feels that the winning party's closing argument was an exaggeration or untruthful or whatever, and we'd be sort of adding a claim automatically to every appeal from a jury verdict. Well, Your Honor, one, we're not talking about a mere puffery or argument. Without question, counsel's allowed to argue the evidence and they're allowed to argue fair inferences from the evidence. But what counsel is not allowed to do is to misstate the evidence and to state as facts things for which there is no evidence. That's grist for the jury mill, isn't it? I'm sorry? I said that's grist for the mill. That's what juries are there for, to decide what's true and what's not and what's correct and what's not. And often you have diametrically opposed versions of the truth. But what the jury is there for is to receive and consider fair argument. As this court said in Wilson, by forcefully stating an unreasonable inference as fact, the prosecutor misled the jury. The evidence in Wilson was strong, the court said. But the problem there, as the problem is here, is that the prosecutor did not stop with that evidence. Rather, the prosecutor argued to the court things that were not supported by evidence and things  that were not supported by evidence and things that were not supported by evidence. And the question at the time, if this was as egregious as you now claim it is? Should counsel have objected? Absolutely, counsel should have objected. But that does not mean that the issue is waived and the standard is clear. It doesn't mean that it's waived. It means it's up here on plain error. That's correct. You've got a very fine district judge who never heard an objection. A very fine district judge who summarized this case as follows. This is the issue in this case. The judge. It really gets down to a simple question. Were these loans or was this income? If it was income, defense has a problem. If they were loans, good day for the defense. This was the core issue in the trial according to that very good district judge. And that very good district judge properly instructed the jury that in deciding that very core issue, it needed to consider whether the promise to repay was evidenced by a note or other instrument and whether repayments were made. But you have evidence, I mean, aside from the closing argument, you have actual evidence. And I don't know this off the tip of my tongue, but I suspect the district court charged the jury that what counsel says is not evidence. That's certainly a typical charge. And to focus on what was said by the witnesses in the documents, and I won't list them all, but you're familiar with the evidence in the record. I mean, there's 119 wire transfers. You have $450,000 that's listed in fees. You got the percentage of the businesses that are supposed to be repaid that are greater than 100%. You got questionable resolutions. I mean, it seems like when you look at this record, there's lots of evidence that would be a reasonable basis for the jury to decide the question. And I'm quite frankly surprised this is the argument. I thought you would be talking about some of the other issues as a lead one because it's probably the one about which the district court has the widest degree of discretion. Well, Your Honor, first of all, the court did not give the standard instruction that closing argument is not evidence. In fact, said that you need to listen to the closing arguments. Was it a proposal that objected to? Your Honor, I don't know. But let me address a couple of the points the court just made. It referenced that $450,000 was marked as fees. What the government argued was in fact that millions of dollars were marked as fees, which was a mischaracterization of the evidence. Further, the fees themselves, if one looks at the refund and reimbursement agreements, that's Government 86 and Government 87, it's JA 1320 and 1321. These are documents from 2009 and 2010, again, before the government's investigation, that says that STS is advancing marketing, advertising, and consulting fees to the Sutherland entities. And what the government says is because there are wires from STS and it says purpose for the wire consulting fees or marketing fees, that that means that those were fees being paid from STS to the Sutherland entities and therefore were income to the Sutherland entities. What this document demonstrates is in fact they were advancing monies for Sutherland to pay fees. This was a loan and there was a requirement that it be reimbursed. This is a contemporaneous document, evidence of reimbursement, yet the government argued in closing that the loan agreements were fake. There's no evidence that the loan agreements themselves or these reimbursement agreements were fake, that they were fabricated, that they were done after the fact. Rather, they're simply evidence with respect to a later in time post-investigation documents. This just sounds like the government was arguing its theory of the case to the jury and you think that that theory doesn't hold up and there's contrary evidence in the record and that's all fine, but why doesn't that just go to a jury? Because it's not that there's contrary evidence. There is no evidence. The government may not either misstate evidence, say there's millions of dollars in fees, when the best possible spin for the government is that there's a couple hundred thousand. I mean, if you think there's insufficient evidence to prove the claim, then argue that, but I don't understand why it's a problem for the government to argue its theory of the case to the jury. Its theory of the case must be supported by facts in evidence. This is not a sufficiency argument. As I've noted, the case law says that even when the evidence is strong, the government cannot misstate evidence in closing argument and to do so is reversible error even under a plain error standard. Here there were multiple misstatements throughout the closing argument. Each and every one of them went to the core issue in the case. Well, you would expect a closing argument to go to the core issue in the case. I'm sorry? You would expect a closing argument to go to the core issue in the case. Correct. I would also expect a closing argument to accurately characterize the evidence and only ask the jury to draw a fair and reasonable inferences from actual evidence, not to encourage the jury to state as fact something that is in fact pure speculation. And that's your responsibility as an advocate. You know, that's what the adversary process is all about, correcting one another's mistakes. I agree. Defense counsel should have objected. That doesn't change the fact that it's an issue on appeal. Not just objected. The best possible objection is to counter the argument. No. No, that's not accurate, Your Honor, with all due respect. Closing argument is not to be about one side to make up evidence and then the other side to have to rebut the made-up evidence. Closing argument is about fair argument from real evidence and the counter-argument from real evidence. So no, I would disagree with that. I think there should have been an objection, but I don't think saying that defense could have dealt with it in the closing argument is the answer. Let me now go to the issue, Judge Carlbaum, that you wanted to, I think expected to discuss, the obstruction issue, because I would like to briefly address that as well. The government, I think, has conceded that the official proceeding here is in fact the grand jury proceeding, and I think that in any event that's a settled question given this Court's decision last month in United States v. Young. This differs substantially from the Young case, does it not? I'm sorry? This differs substantially from the Young case. It does. The Young case was dealing with an FBI investigation, and this was, here documents were turned over to the U.S. Attorney in connection with the grand jury proceeding. The grand jury had been convened. Correct. Factually, it is distinct. The legal principle is the same, that there has to be an intent to obstruct the grand jury proceeding, not the investigation. Here, the alleged obstruction indictment was giving false or fake loan documents to the U.S. Attorney with the intention that they be given to the grand jury, but there is no evidence that they were given, that there was an intent that they go to the grand jury. So what the government is left with Oh, sorry. Didn't the district court instructed the jury, right, that there needed to be an intent to provide the documents to the grand jury. So this is another sufficiency claim? No jury could have found that there was such an intent? It is, but a sufficiency claim under the correct legal standard, yes. Right. Which the – but you agree that the district court's instructions to the jury capture the legal standard. I'm not disputing the validity of the instructions they've given, Your Honor. Because what you do is you have the whole question of the nexus, which is a question of law, but then when you get into the falsity and intent, those become questions of fact. Correct, Your Honor. So what the government argues is that there was an intent to influence the grand jury because by giving these documents to the U.S. Attorney, it was foreseeable that the U.S. Attorney then would not bring charges. In fact, that was the desired result, and that would impede the grand jury because the grand jury would conclude without bringing charges. You agree that that's a jury question? Your Honor, I think there are three problems with that argument. One is that the indictment alleges that the loan documents were given with the purpose of giving the loan documents to the grand jury, not with the purpose of simply getting the grand jury to shut down. And there's no evidence that there was an intent that the loan documents be given to the grand jury. Second, this indirect influence of the grand jury, maybe the U.S. Attorney's office will give them to the grand jury, is the very sort of indirect influence that Aguilar says is insufficient. And third, if the government's argument were permitted here, any time a proffer is made and the proffer is disbelieved, which is every time that a case is charged, you could have an obstruction count. If defense counsel had not provided documents at all, if he had simply written the letter with no enclosures asking at the end, please decline prosecution, under the government's theory, that could give rise to an obstruction of justice count. I actually share a little bit of that concern, but the statute says what it says. It says influence of proceeding, and maybe that means using disputed documents in your case, which I can understand puts defense counsel in a difficult spot, but how do we deal with that policy argument in the face of the black and white language of the statute? The same way the Court did in Aguilar and Marinello, which is by not reading the statute broadly, reading a direct influence nexus requirement, and exercising what the Court noted they've traditionally exercised, restraint in assessing the reach of a federal criminal statute. But can I ask you about that? Because, I mean, the case we have in front of us is not the hypothetical you just gave us, right? There's a — on the facts of this case, the grand jury is already convened. He knows it's convened. He gives — the grand jury has subpoenaed documents, and then in an effort to explain away those documents, false documents are given to the U.S. attorney. Whatever we might think about potential applications on other facts, can you explain to me why on the facts of this case that doesn't show a nexus? Yes, Your Honor. So Aguilar itself, the defendant, was aware that there was a grand jury proceeding pending. So that's not the issue. The issue is — Well, I'm saying when you put them all together. I understand, Your Honor. The issue is there is no evidence that they said, you know, please present these to the grand jury. We think that the grand jury is going to conclude otherwise if it sees these documents. That's not what I'm saying. If the grand jury has already subpoenaed documents, which raise this very strong suspicion, and then the defendant gives fake documents to the U.S. attorney in an effort to explain away the evidence that's been put in front of the grand jury, that looks like you're messing with the grand jury. No. It looks like you're messing with the U.S. attorney. You're trying to get the U.S. attorney to decline prosecution. The only impact that that has on the grand jury is that the grand jury doesn't bring charges. And that — It's a pretty big impact, isn't it? It is a big impact, but it is an indirect impact, the very impact that the court in Maranello says is too broad of a stretch for the statute, and one that would relate to every proper agreement whether or not the documents were presented. Every proper one. Your Honor, I would like to reserve some time for rebuttal if I may. The whole question, I guess, is you can employ the offices of third persons in order to obstruct official proceedings. You don't have to actually charge into the room yourself. You can — this kind of statute can be violated by means of agency and putting third people up — third persons up to trying to obstruct the official proceeding, in this case, the grand jury. I agree with everything the court said except for that last clause. Here, for example, if — Excuse me. You can use a third person to influence, and you can also attempt to channel an influence through a third person, in this case, the U.S. attorney, and particularly where the U.S. attorney has the most prominent, indeed, the commanding say-so over the outcome of a grand jury proceeding. What more direct way is there to influence a grand jury proceeding than to influence the U.S. attorney? I mean, you know, they're not quite one and the same, but they almost are in most cases. Well, one could produce documents to the grand jury. One could testify in front of the grand jury. One could say to the U.S. attorney, I understand you're going to be providing these documents to the grand jury. There are a lot of ways that one could directly influence the — I don't see where giving the documents to the U.S. attorney affords us a basis of ruling for you as a matter of law. Because it's the same as giving it to an FBI agent in the course of a grand jury investigation when you know there's a grand jury investigation. It is certainly possible that those documents will make their way to the grand jury based on a discretionary call by a third party. The statute doesn't read it that way. It reads whether there's an attempt to influence or obstruct. And that intent to influence or obstruct can take a variety of forms. And it doesn't open itself up to absolute rules of law. It's a matter, really, you're trying to take factual questions and transmute them into legal questions. And the only legal question here, as I see it, is the question of a nexus. And that was properly instructed under Aguilar and Marinello. And the rest of it is jury. The rest of it, the intent to influence and the rest of it and how you go about influencing and whether you hand it to this person or that person, you know, that's a jury question. One of the things I invade against is we keep trying to make — transmute questions of fact into questions of law. And it's taken away — it's bridging the role of the jury in these cases. And a lot of this case is just pure factual. I understand the position the Court's articulating. I would simply note that the exact same argument could be made about Aguilar or Marinello and say that the Supreme Court in those cases should have just said it's a jury question. They didn't. They said we, the Court, have to decide what is a sufficient nexus. And an indirect influence is not a sufficient nexus. There has to be a direct influence. Your Honor, I would like to have some time for rebuttal if I can. I know we're long over. The Court's instruction was straight out of Aguilar. And Marinello was straight out of Aguilar. You know, the instruction was as the crow flies from Aguilar to this case to Marinello. They all go at the same thing, which was the natural and probable effect. Anyway, you've got some — you're correct about — we agree on one thing. Very nice. And what we agree on is — Hopefully more than one, Your Honor. No, what we agree on is that you have some rebuttal time. Thank you. Okay. Ms. Wray. May it please the Court, Amy Wray for the United States. Just to begin by correcting Mr. Pollack and answering Judge Quattlebaum's question about the instructions to the jury about closing arguments, and I don't intend to dwell on the closing argument issue unless Your Honors have some questions, pages 980 to 981 of the Joint Appendix. Judge Cogburn instructed the jury that you should — you will properly — the lawyers will properly make their arguments. You should listen to those. In the end, it is your decision to make with regard to how you view the evidence in this case. If they argue something that your memory differs from, you take your memory, not their memory. Also, remember at all times that what the attorneys say is not evidence. So I think Judge Cogburn gave exactly the instruction that he should have, and I don't think that the United States closing argument was actually that far — was out of bounds at all. I think it was an appropriate argument based on the evidence. But turning really what I think to what I think is the closer issue in this case, if I may, I'll address the obstruction issue just beginning. And I would say that the nexus requirement that the Supreme Court established in Aguilar and in Marinello requires a relationship in causation, time, and logic. We have causation grand jury, time and — grand jury issues its subpoenas. Three months later, Mr. Sutherland provides these false documents to his lawyer, and the government had to show not only that these documents were provided, they had to show corrupt intent. And I would respectfully suggest, Judge Cogburn, that that is maybe the limiting factor here. There has to be corrupt intent. So were the documents that were attached and supplied with the attorney's letter responsive to the subpoena? Yes, they would have been. So if the documents were created back prior to investigation, as it sounds like they were, it sounds like your obstruction claim is not the creation of the documents. That would have been too remote. It's the transmittal of them to the U.S. attorney, correct? Yes. Now, I will say that it's not clear at all when those documents were created. I understand. So if we could have shown that they were created more, say, after the grand jury proceedings had been instituted, then I would say they actually would, but yeah. You don't have evidence of that? We don't need to show that. I would say we have evidence, but sorry to interrupt, Your Honor. No, that's okay. So if someone creates documents sometime in the past over an issue about which there's evidence either way about whether it's a loan or an income, and that's their defense, and those documents exist in their response, would producing them in response to a subpoena be obstruction? No, not unless there was corrupt intent and we could show and the jury could reasonably infer that they were false. But if they're – I mean the false is the outcome of the trial, and they're being subpoenaed, in my hypothetical, to provide documents. If they don't produce the documents, they're violating the force of law of the subpoena. If they do produce the documents, you're going to charge them with obstruction. What's a defense lawyer to do in that situation or a defendant to do? So if I'm understanding Your Honor's question, there's not evidence that we would say supports the fabrication of – like these weren't just sort of wholly made out of whole cloth. You're saying they're false because the jury found against the defendant. Which is what we have here. Right. I don't think that that would support an obstruction claim. Why is that not what we have here other than they're giving them to the U.S. attorney rather than directly in response to the subpoena? Because we have to show corrupt intent. We have to show that Sutherland intended to impede the grand jury. And these documents happen to be on their face. They show that they're false, that they were fabricated. Because the dates that they were signed reference loan payments that are – or rather loans that were already made. They were signed in 2011 supposedly, but they refer to payments that were – monies that were sent, funds that were sent past tense in 2013. So you might analogize it to a perjury prosecution. Every time a witness takes the stand, they're theoretically open to the charge of perjury. And they're put to the choice of just, in many cases, not taking the stand. Particularly if there's a Fifth Amendment problem. Or taking the stand and running whatever possibility there is of perjury. And the Supreme Court said that kind of coercion, quote, coercion, is not problematic. That the criminal justice system has all kinds of things where you have to make choices. But we know that perjury prosecutions are notoriously difficult to bring and prove. And the same with this kind of thing, which is quasi-perjury. People provide documents in response to subpoenas all the time. And an infinitesimal number get prosecuted under whatever this statute is. An infinitesimal number. So it's not an easy crime to prove. And as a practical matter, it exists only for just blatant misrepresentations and falsehoods, a la here. Right. And that's because we have to show a specific intent to impede. It's not enough for us, you know, most crimes are if you know what you did, you're guilty. But, of course, with both tax fraud and this obstruction count, we have to show that you intended to impede. That's not easy to show if it's simply, well, we think that these records support our argument. That we can show only if we can show that the records were fraudulent. And that was the evidence in this case. It really wasn't close in terms of the nexus requirement because at least as to, you know, more difficult, what I would argue would be more difficult cases of someone simply saying something. We have documents that appear to have been fabricated. We could support that argument. And that allows the jury to infer that corrupt and specific intent to impede the grand jury. These are tough cases to prove. And they're tough cases to win. They are. And I would note that the jury didn't have any trouble in this case. It came back in less than two hours. And wasn't the, going back to the trial record, was, I'm throwing a blank on the specifics, but. Hopefully I won't. Was that, excuse me? Hopefully I won't. We'll see. There was something, was, at trial, were the documents objected to? Wasn't there even, didn't they stipulate? They did stipulate. What was the stipulation? As I recall, they stipulated that these documents were provided to the U.S. Attorney's Office. And they stipulated, I don't recall. Was there objection to their admission into evidence? No. No. No, because their argument is that those loan documents support their defense. So there wasn't an objection. In fact, even on appeal, they're relying on these loan documents and arguing that we couldn't, the jury couldn't possibly have concluded, and the government was improperly arguing that they were fraudulent. Now, I do want to refer the court to a couple of cases that I think support our nexus argument. One is the Wine decision, United States v. Wine, W-E-I-N, the 2013 unpublished decision from this court, in which this court held that a letter that was attached to a motion to dismiss that was filed in the court supported a 1512C conviction. So a letter that was provided through a lawyer to the court. And then also the 11th circuit has a decision in 2007, which was Mintmeier. And in that case, the defendant gave the attorney notes to use to coach a witness before the grand jury testimony. So both of those simply stand for the proposition that you can use an attorney, you can use a third party to commit an obstruction of an official proceeding violation. Also, in Aguilar itself, I note that the Supreme Court said one of the factors it considered was in that case, the government had not shown that the agents acted as an arm of the grand jury. Well, if there is any arm of the grand jury, it is the United States attorney. And so, and it really doesn't matter whether the indictment charged that Sutherland intended to provide those documents to the grand jury or what I actually think is probably more likely, that it simply intended the United States attorney to withdraw. As these cases go, this is a pretty strong one because you have a grand jury that's been convened and it's in session. And in the Reich case and the Second Circuit, the documents were submitted and they were not submitted in response to a subpoena at all. And the Second Circuit said you don't need the fact that documents were submitted in response to a subpoena in order to prove the claim. Here we have the added fact that there was a subpoena for the document and the grand jury had been, so you're right near the core of the official proceeding. Whereas in Young and some of the other cases, you were much more on the periphery and it was much more speculative about whether the FBI investigation was ever going to mature into anything because loads and loads of people are investigated and they communicate with the people that are investigating them. And that communication goes back and forth, but there's no criminal violation there. You have to be close to the core of the thing. Yes. It can't be just some far-off possibility, and that's what you have here. Yeah, and I would note that in addition to that, I just actually noticed this last night when I was rereading everything. The district court not only instructed the regular instruction of you have to find that they intended to impede the grand jury, but the district court also said on page 1081, the intent to influence an ancillary proceeding independent of the grand jury is not enough. I'm glad you mentioned that because I also thought that that instruction was highly significant, and I will tell you my one concern about your argument is that when you talk about the U.S. attorney sort of being an arm of the grand jury, I mean, the U.S. attorney is not an official investigation, right? Right. So I'm worried about a rule that would effectively turn the U.S. attorney into an official investigation, so that if you lie to the U.S. attorney or fabricate documents and give them to the U.S. attorney, that's sufficient. And I do think that that instruction helps to address that concern. But can you tell me other reasons I shouldn't be concerned about that? Well, I mean, I agree. I think that if we were making the – first of all, let me just say that I referenced the arm language because it's used in Aguilar, and I was trying to think of who's an arm of the grand jury. I suppose maybe an FBI agent that's going out to get the documents or something like that might be more properly considered an arm. Either way, the government all along has said we're not it. You can provide documents to us all day long and twice on Tuesday. If there is not a grand jury investigation that is going on, if it is earlier in the process, we are not an official proceeding. Even if the grand jury can be anticipated? Well, you know, you get to the point of reasonably foreseeable, and, of course, that's the right case. I mean, if you're close enough and they know they're a target, let's say they've gotten a target letter from us, it's possible that you could get close enough before the institution of the grand jury proceedings. And I certainly don't want to say that that's not close enough because I think it would be. The question really comes down to time, causation, logic. Facts. Facts. And I love this language from Aguilar, is the natural and probable consequence of the endeavor to impede the grand jury. That seems really nice language to me about kind of what a jury can decide. Is it natural and probable that what you just did would impede the grand jury, and is it reasonably foreseeable? So I think that's the limiting factor along with the corrupt intent, which I think really probably did not focus on enough in my brief. I think that's an important limiting factor because that's a lot for us to prove. If Your Honors don't have any further questions about the sufficiency on the tax fraud counts, I'll rest on our argument in the brief and what I consider to be a fair wealth of evidence in support of those convictions. Judge Harris, did you have any? Thank you, Your Honors. Do you have any questions? Mr. Pollack. Thank you, Your Honor. First of all, with respect to the closing argument point, I appreciate the quotation from counsel about the instruction from the trial court. I would note that in the Davis case, that standard instruction was also given to the jury, and the court said that that standard instruction cannot trump argument that is not based in evidence, that it is improper to give argument based in evidence and a reversible error regardless of whether or not that standard instruction is given. With respect to the obstruction, the government has argued that the corrupt intent is a sufficient limiting principle. The government made that exact argument in Aguilar and Marinello, and it was rejected. The court said that that is not a sufficient limiting principle. The government was incorrect in arguing that these documents were responsive to the subpoena. They were not. In 2012, subpoenas were issued to the corporate entities, not to Mr. Sutherland individually. The loan documents were loaned to Mr. Sutherland in his individual capacity. They were not responsive to the 2012 documents. In fact, the government later in 2015 issued subpoenas to Mr. Sutherland for the first time and received these very documents in response to that subpoena. So they were not responsive to any subpoena that had been issued at the time that they were given to the U.S. Attorney's Office. The government again talks about the loan repayment documents that are effective 2011-2012, but make reference to 2013 loans to argue that those documents, those loan repayment documents, were done later with an earlier effective date. But those documents are distinct from the loan agreements, the loan agreements and the reimbursement agreements. Those agreements, there is no evidence. In fact, the government made the concession that they couldn't prove that those documents were fake, and that's exactly what the government, in closing argument, told the jury and asserted as fact that those documents are fake, and that's exactly what the indictment alleged. The jury did not have any trouble convicting. I would agree with that observation, and they came back very quickly, very quickly after a closing argument that repeatedly misstated the evidence on the core issue in the case, and with the very last words to the jury being, in rebuttal argument, a misstatement. Millions of dollars coming into his account marked as fees but treated as non-taxable. Millions of dollars, no evidence of that. There's a word for it, ladies and gentlemen. It's appalling. Find the defendant guilty on all counts. I would agree. That was a very effective argument. The problem is it wasn't based in the facts and the record. With respect to the case law cited by the government in support, it actually illustrates the problem here. They cite a case, Wine, in which a letter was filed with the court, filed directly with the official proceeding, coaching a witness before the grand jury, coaching the witness in the official proceeding. The government made a very significant concession. The government thinks it is more likely that Mr. Sutherland did not intend for the loan documents that he gave to the U.S. attorney to go to the grand jury. Rather, he was simply trying to get the grand jury to decline, to get the U.S. attorney to decline prosecution, and that in and of itself is enough. But the idea that he intended the documents to be given to the grand jury is precisely what the indictment charges, paragraph 18 of the indictment, and it is precisely what the government argued in closing, the very thing that appellate counsel now says that she thinks more likely than not was not the case. So the government, as I said in my opening argument, really is left with the argument that because Sutherland was trying to influence the U.S. attorney's declination decision, that in and of itself makes it obstruction of the grand jury proceeding. Thank you very much, sir. We appreciate your argument. Thank you. We'll come down in Greek counsel and move directly into our next case.
judges: J. Harvie Wilkinson III, Pamela A. Harris, A. Marvin Quattlebaum Jr.